**Alissa Christine BEARDSLEY, petitioner, Appellant,**

v.

**Dant Antonio GARCIA, Jr., Respondent.**

No. A06–922.

Court of Appeals of Minnesota.

May 22, 2007.

Shanda K. Pearson, Rider Bennett, and Diane B. Bratvold, Briggs & Morgan, Minneapolis, MN, for appellant.

Danté Antonio Garcia, Jr., St. Cloud, MN, pro se respondent.

Elizabeth J. Richards, Minnesota Coalition for Battered Women, St. Paul, MN, Amicus Curiae Minnesota Coalition for Battered Women.

Considered and decided by MINGE, Presiding Judge; STONEBURNER, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

This appeal arises from the district court's decision to grant temporary parenting time in conjunction with a domestic-abuse order for protection under Minn. Stat. § 518B.01 (2006). Appellant-mother argues that the district court lacked subject-matter jurisdiction and statutory authority to award temporary parenting time to respondent whose paternity of the child has been acknowledged by the parties in a recognition of parentage under Minn.Stat. § 257.75 (2006). Appellant also argues that the district court's actions denied her due process of law and are contrary to sound public policy. We affirm.

## FACTS

On March 2, 2006, appellant Alissa Beardsley petitioned for an order for protection against respondent Danté Garcia, Jr. The petition states that Beardsley has two children, but she and Garcia do not have any in common. Beardsley did not file the petition on behalf of the children, nor did she request that Garcia be prohibited from having any contact with the children. The district court issued an ex parte order for protection and set a hearing on the petition. Two weeks later, the

parties appeared pro se for the hearing. Garcia did not contest the issuance of an order for protection but requested parenting time with his child. Garcia produced a recognition-of-parentage form, in which he and Beardsley acknowledged his paternity of Beardsley's younger child, D.G. Although she had executed the recognition-of-parentage form, Beardsley insisted that Garcia is not D.G.'s biological father. And she expressed her concern that D.G. would not be safe with Garcia.

Without making any findings of domestic abuse, the district court issued an order for protection in effect for one year. The order prohibited Garcia from having any contact with Beardsley and granted Garcia supervised parenting time with D.G. once each weekend for two hours. This appeal followed, and we granted the Minnesota Coalition for Battered Women leave to file an amicus brief.

## ISSUES

I. In an action seeking a domestic-abuse order for protection under Minn.Stat. § 518B.01 (2006), was the district court without subject-matter jurisdiction or statutory authority to award temporary parenting time to respondent, whose paternity of the child has been acknowledged by the parties in a recognition of parentage under Minn.Stat. § 257.75 (2006)?

II. Did the district court's actions violate the right to procedural due process of law?

## ANALYSIS

### I.

### A.

Beardsley argues that the district court was without subject-matter jurisdiction to grant Garcia's request for parenting time. Specifically, Beardsley contends that, although the district court ordinarily has subject-matter jurisdiction to establish parenting time in a domestic-abuse order-for-protection (OFP) proceeding under Minn.Stat. § 518B.01, subd. 6(a) (2006), the recognition-of-parentage (ROP) statute divests the district court of jurisdiction to award parenting time to a father whose paternity has been acknowledged by an ROP. *See* Minn.Stat. § 257.541, subd. 3 (2006) (providing that ROP father may bring independent action under Minn. Stat. § 518.156 (2006) seeking custody or parenting-time rights, but that those proceedings may not be combined with any chapter 518B proceeding). We review questions of subject-matter jurisdiction de novo. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn.2001).

Subject-matter jurisdiction "involves a court's authority to decide a particular class of actions and its authority to decide the particular questions before it." *Herubin v. Finn*, 603 N.W.2d 133, 137 (Minn.App.1999). As the Minnesota Supreme Court observed in *Burkstrand*, that the district court lacks statutory authority to take certain action in an OFP proceeding does not mean that the district court lacks subject-matter jurisdiction over the petition. 632 N.W.2d at 211–12 (holding that district court's failure to hold OFP hearing within statutory time frame did not divest it of subject-matter jurisdiction over petition).

Under the OFP statute, a district court issuing an OFP may "establish temporary parenting time with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children." Minn. Stat. § 518B.01, subd. 6(a)(4). The OFP statute does not distinguish between adoptive and biological parents, nor does it distinguish between "adjudicated" or "married" fathers. Indeed, Beardsley concedes that the district court has the au-

thority to award temporary parenting time to an "adjudicated" or "married" father in an OFP proceeding. Thus, regardless of whether the ROP statute precludes the district court from granting parenting time to Garcia, the district court had subject-matter jurisdiction over the issue raised in the OFP proceeding—whether to grant temporary parenting time to Garcia, who asserted his status as D.G.'s father under an ROP executed by the parties.

## B.

■ Citing Minn.Stat. § 257.541, subd. 3, Beardsley argues that the district court in an OFP proceeding lacks statutory authority to award temporary parenting time to a respondent whose paternity has been acknowledged by an ROP. We review questions of statutory interpretation de novo. *Burkstrand*, 632 N.W.2d at 209.

Under the ROP statute, the mother and father of a child born to an unmarried mother may attest in writing that they are the biological parents of the child and wish to be recognized as such. Minn.Stat. § 257.75, subd. 1 (2006). The written acknowledgment of parentage must be made under oath, signed, notarized, and filed with the state registrar of vital statistics. *Id.* If the ROP is not revoked and if there is no other presumed father, the ROP "has the force and effect of a judgment or order determining the existence of the parent and child relationship." *Id.*, subd. 3 (2006). Such a "judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." Minn. Stat. § 257.66, subd. 1 (2006). When the ROP has been properly executed and filed, "if there are no competing presumptions of paternity, a judicial or administrative court may not allow further action to determine parentage," and "[a]n action to determine custody and parenting time may be commenced pursuant to chapter 518 without

an adjudication of parentage." Minn.Stat. § 257.75, subd. 3.

The ROP father's independent action under section 518.156 seeking custody or parenting-time rights "may not be *combined* with any proceeding under chapter 518B," which governs domestic-abuse proceedings. Minn.Stat. § 257.541, subd. 3 (emphasis added). Beardsley argues that section 257.541, subdivision 3, expressly forbids the district court from granting Garcia's request for parenting time in the domestic-abuse proceeding. Therefore, Beardsley argues, the district court acted without statutory authority when it granted Garcia's parenting-time request.

■ Indeed, the ROP statute prohibits an ROP father from combining his independent action for custody or parenting-time rights under chapter 518 with a domestic-abuse proceeding under chapter 518B. But contrary to Beardsley's argument, Garcia neither sought nor received a custody or parenting-time order under chapter 518. Rather, he sought and received a temporary order for parenting time exclusively under section 518B.01. The district court's OFP granting Garcia supervised parenting time is not the equivalent of a parenting-time order under chapter 518. The two are different in significant respects. Section 518B.01 "neither establishes nor terminates a legal relationship." *Baker v. Baker*, 494 N.W.2d 282, 285 (Minn.1992), *superseded by statute as stated in Burkstrand*, 632 N.W.2d at 212. The OFP is temporary—lasting only for one year—and may be modified as set forth in Minn.Stat. § 518B.01, subd. 11 (2006). In contrast, an order granting parenting time or custody under chapter 518 is permanent unless a proper motion under that chapter results in a modification. *See* Minn.Stat. § 518.175, subd. 5 (2006) (providing for modification of order granting or denying parenting time);

Minn.Stat. § 518.18 (2006) (addressing modification of custody). When it granted Garcia supervised parenting time under section 518B.01, the district court did not improperly combine a proceeding under section 518.156 with the OFP proceeding.

Beardsley's attempt to distinguish Garcia as an ROP father from an adjudicated father is contrary to the ROP statute and controlling precedent. Without revocation of the ROP or the existence of a competing presumption of paternity, the ROP has the force and effect of an adjudication of the parent-child relationship. Minn.Stat. § 257.75, subd. 3; *In re Custody of Child of Williams v. Carlson*, 701 N.W.2d 274, 282 (Minn.App.2005) (holding that if "recognition of parentage was never properly vacated, it continues to have the force and effect of a judgment or order that [the father named on the ROP] is the adjudicated father"). Moreover, the Minnesota Supreme Court has cautioned against "muddling together" section 518B.01 and chapter 257 because they are "distinct and targeted statutory schemes," and "the availability of extraordinary relief intended by the passage of the Domestic Abuse Act is utterly negated by tying to it unnecessary external procedural requirements." *Baker*, 494 N.W.2d at 286. Section 518B.01 "is a substantive statute which is complete in itself," and "[n]othing within the plain wording of the statute suggests that reference to any other statute is necessary." *Id.* at 285.

Neither section 257.541 nor section 518B.01 precludes the district court from granting Garcia, an ROP father, supervised parenting time for the duration of the OFP. Even if construed together, the statutes do not support the conclusion that Beardsley urges us to reach. Because the district court has statutory authority to establish temporary parenting time in an OFP with regard to a child of the parties, and an ROP is determinative as to the existence of the parent-child relationship, the district court had statutory authority to grant Garcia supervised parenting time with D.G.

In light of the district court's statutory authority, the decision whether to grant relief under section 518B.01 is discretionary. *Mechtel v. Mechtel*, 528 N.W.2d 916, 920 (Minn.App.1995). The district court also has broad discretion in making parenting-time decisions. *Matson v. Matson*, 638 N.W.2d 462, 465 (Minn. App.2002). A district court abuses its discretion by resolving the matter in a manner "that is against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984); *see Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 490 (Minn.App. 2005) (reversing OFP because district court's finding of domestic abuse was unsupported by evidence).

When deciding whether to grant parenting time in an OFP proceeding, the district court must give primary consideration to the safety of the victim and the child. Minn.Stat. § 518B.01, subd. 6(a)(4); *see Baker*, 494 N.W.2d at 290 (holding that district court need not make best interests findings when making custody and parenting-time decisions in OFP proceedings and that oral findings regarding safety under section 518B.01 are sufficient). Although the district court erred by failing to make express findings regarding safety, the award of two hours of supervised parenting time per week is very limited. When viewed in conjunction with the order for no contact with Beardsley, the grant of supervised parenting time implicitly credits Beardsley's allegations of abuse and her safety concerns for D.G. and is within the district court's discretion. *See Vogt v. Vogt*, 455 N.W.2d 471, 474 (Minn.1990) (stating that by issuing OFP, district court implicitly found probable cause of physical abuse).

## II.

Beardsley argues that, even if the district court has the authority to address Garcia's request for parenting time, the lack of notice that Garcia would request parenting time at the hearing along with "the abbreviated hearing and lack of sworn testimony" deprived her of the due-process right to a meaningful opportunity to be heard on the parenting-time issue. Beardsley acknowledges her failure to raise the due-process issue before the district court, but she requests that we address the issue in the interests of justice as authorized by Minn. R. Civ.App. P. 103.04. *See In re Welfare of D.D.G.*, 558 N.W.2d 481, 485 (Minn.1997) (stating that issues not raised in district court are waived on appeal); *see also Putz v. Putz*, 645 N.W.2d 343, 350 (Minn.2002) (invoking Minn. R. Civ.App. P. 103.04). Citing *Baker*, Beardsley contends that the procedural safeguards in place in an OFP proceeding are inadequate to protect against the erroneous deprivation of her interests in a parenting-time decision regarding her child.

 In *Baker*, the supreme court observed that due-process requirements "are flexible and call for such procedural protections as the particular situation demands." 494 N.W.2d at 287. When assessing whether the procedural protections are constitutionally adequate, the relevant factors for our consideration are the private interests affected, the risk of erroneous deprivation of these interests, the probable value of additional safeguards, and the government interests involved. *Id.* When addressing the father's due-process claim, the *Baker* court considered the interests of both parents in the custody and enjoyment of their child, "extensive" procedural protections in section 518B.01, which guard against the erroneous deprivation of those interests, the risk that additional safeguards may produce "unneces-

sary and possibly dangerous time delays," and the public interest in a violence-free society. *Id.* at 287–88. Our consideration of the same factors leads us to conclude that Beardsley was not denied due process of law.

A district court may grant relief in an OFP proceeding, including establishing temporary parenting time, only "[u]pon notice and hearing." Minn.Stat. § 518B.01, subd. 6(a); *El Nashaar v. El Nashaar*, 529 N.W.2d 13, 14 (Minn.App.1995) (holding that right to hearing in OFP proceedings includes right to present and cross-examine witnesses, produce documents, and have case decided on merits). Because the OFP statute expressly permits the district court to establish temporary parenting time, Beardsley's notice argument is unavailing. *See Sweep v. Sweep*, 358 N.W.2d 451, 453 (Minn.App.1984) (affirming award of temporary custody of child to grandparents in OFP proceeding despite their failure to intervene or give notice of intent to seek custody).

The record does not demonstrate, nor does Beardsley show, how the district court deprived her of the right to a hearing on the parenting-time issue. In her OFP petition, Beardsley was advised:

NOTICE TO PETITIONER:

Be prepared for a hearing on the scheduled date. You may be asked to testify at that time.... You should bring any available documentation such as police reports, hospital and doctor reports, pictures, witnesses, or other items.

Beardsley received ample notice that she should be prepared to testify and bring any relevant evidence to the hearing. Furthermore, Beardsley explained to the district court the basis for her fear that D.G. is not safe with Garcia. When the district court advised Beardsley that it would "probably provide for supervised

parenting time at an appropriate facility," the district court asked Beardsley if there was "[a]nything else" that Beardsley wanted to say. Beardsley responded:

> Just that I'm concerned about my child's safety. Mr. Garcia has anger problems and he might get angry at somebody. I don't—the way he was threatening me in front of my children, he might threaten somebody else in front of my children. And that's a scary thought to me and it might escalate and anything could happen.

> And I want my son to be safe because if [Garcia] gets angry he might not take my son into consideration ... and what my son has to see. My son has seen enough.... I'm just—we're concerned about my son's safety and my safety as well.

Beardsley contends that "the expedited nature of the proceedings [does] not allow parties to present evidence that would normally be considered when making initial determinations of custody or parenting time under section 518.516." But an OFP is a temporary order and is not the same as an order for parenting time under chapter 518. *See* Section I.B. *supra.* And nothing in the record reflects that Beardsley was prevented from presenting any evidence to the district court. To the contrary, Beardsley had ample opportunity to address her safety and that of D.G., which are the primary considerations of the district court when determining whether to grant a parenting-time request in an OFP hearing. Minn.Stat. § 518B.01, subd. 6(a)(4).

Although a petitioner in an OFP proceeding is entitled to a hearing, the failure to request a particular procedure, such as cross-examination, constitutes waiver. *See Barton Contracting Co. v. City of Afton,* 268 N.W.2d 712, 716 n. 3 (Minn.1978) (noting that right of cross-examination was waived because transcript contains no indication that any request to cross-examine was made). Beardsley argues on appeal that she did not have an opportunity to cross-examine Garcia. But the hearing record establishes that she did not request an opportunity to cross-examine Garcia. And Beardsley's status as a pro se party does not entitle her to more procedural protections than a represented party or relieve her of the responsibility to assert her rights before the district court in order to preserve issues founded on those rights for appeal. *See Fitzgerald v. Fitzgerald,* 629 N.W.2d 115, 119 (Minn. App.2001) ("Although some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys and must comply with court rules."); *Ronay v. Ronay,* 369 N.W.2d 12, 14 (Minn.App.1985) ("The right to represent oneself in legal proceedings does not entitle a party to modification of procedural rules."). Because Beardsley had both notice and an opportunity to be heard, and because she fails to show how additional procedures were necessary to protect her interests, her due-process claim fails.

Nonetheless, it is with these due-process considerations in mind that we turn to the public-policy concerns raised by Beardsley and the amicus curiae. These concerns include whether an abuser is making a parenting-time request solely to harass or control the victim, whether the award of parenting time will result in a father having more access to the victim, and whether the victim's or the child's safety is compromised by a parenting-time order. We also are mindful of the policy concern that a mother may choose to forego seeking an OFP out of fear that a father will be awarded parenting time.

The purpose of Minn.Stat. § 518B.01 is "to provide speedy, effective

relief to victims of domestic abuse." *Burkstrand,* 632 N.W.2d at 213; *see Baker,* 494 N.W.2d at 285 (stating that section 518B.01 was enacted to protect victims of domestic assault and is designed to curtail harm). In an OFP proceeding, a district court "should consider the uniqueness of the remedies available under the statute, as well as the potentially devastating consequences if such relief is not granted." *Mechtel,* 528 N.W.2d at 920. Thus, while recognizing that the district court has the authority to award fathers, including those with an ROP, parenting time in an OFP proceeding and that "both parents have strong interests in the custody and enjoyment of their child, a parent's love and affection must yield to considerations of the child's welfare." *Baker,* 494 N.W.2d at 287; *see In re Halverson ex rel. Halverson v. Taflin,* 617 N.W.2d 448, 451 (Minn.App. 2000) (stating that OFP addressing parenting time or custody, although temporary, may infringe on or deprive parent of fundamental interest in his or her child). To that end, a mother who fears for her child's safety can petition for an OFP on behalf of the child, Minn.Stat. § 518B.01, subd. 4(a) (2006), and request that the OFP prohibit the father from having any contact with the child protected by the OFP.

It is indeed true that, even when there has not been physical abuse of the child, the child may suffer emotional distress in the presence of an abusive parent; · and a child exposed to violence may perpetuate that behavior. *Baker,* 494 N.W.2d at 287–88 n. 8; *see Hall v. Hall,* 408 N.W.2d 626, 629 (Minn.App.1987) (affirming OFP against father imposing supervised visitation despite lack of allegations of abuse directed at children), *review denied* (Minn. Aug. 19, 1987). We also recognize that typically the most dangerous time for a victim in an abusive relationship is when the victim chooses to leave the abuser. *Baker,* 494 N.W.2d at 286 n. 4. Thus, if the district court finds that the victim or a child's safety will be jeopardized by parenting time, "the court shall condition or restrict parenting time as to time, place, duration, or supervision, *or deny parenting time entirely, as needed to guard the safety of the victim and the children.*" Minn.Stat. § 518B.01, subd. 6(a)(4) (emphasis added).

On this record, however, there is no indication that Garcia made the parenting-time request solely to harass, control, or gain access to Beardsley. And while there is a troubling dearth of findings on the safety issue, we cannot conclude based on this record that an order awarding Garcia parenting time under the severely restricted conditions of two hours once per week with supervision is an abuse of discretion, particularly in light of the OFP provision forbidding any contact with Beardsley. If, for the public policy reasons advanced by Beardsley and the amicus curiae, the district court is to be divested of its authority in an OFP proceeding to award an ROP father temporary parenting time with his child on a basis that gives primary consideration to the safety of the victim and the child, it is the province of the legislature, not this court, to do so. *See, e.g., Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn. 1988) ("The function of the court of appeals is limited to identifying errors and then correcting them."); *Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks.").

## DECISION

The district court had both subject-matter jurisdiction and statutory authority to issue a domestic-abuse order for protection granting temporary supervised parenting

time with the parties' child to respondent whose paternity had been acknowledged by the parties in a recognition of parentage. And on the record before us, it was not an abuse of discretion to do so.

**Affirmed.**